Thank you, Your Honors. Michael Tracy, appearing for John Mitchell, the Plaintiff Appellant. This case is a Fair Labor Standards Act claim. When Congress first passed the Fair Labor Standards Act, there were two primary purposes. One was to create employment by diffusing the workforce. The second was to provide proper wages for employees who work excessive working hours. California, much later, passed a meal break provision to provide employees premium wages when they don't receive a meal break. At issue in this case is whether California's requirement to pay for a meal break, whether it actually applied to this particular case, is one of the issues. But assuming that it did apply in this particular case, does that give California authority to waive the important protections provided by the Fair Labor Standards Act? The Fair Labor Standards Act contains a saving clause that permits state laws that provide more protection to the employees, but it does not give employers the right to waive compensation that would be due to the employees simply in the goal of corporate efficiency. A big argument that Medtronic has made here is that some of these payments, undisputed statutorily-wise, if you pay employees safety bonuses, performance bonuses, night shift differentials, there was even a case where an employer was providing educational benefits to the employees and the court said that the value of those educational benefits needed to be included in the regular rate of pay on which overtime is computed. Well, what we're talking about here concerns the lunch hour, right? Yes, Your Honor. Would you just explain how much of this extra they were working? Just explain how this worked because it's a little confusing. Okay. So what would happen is the employees were scheduled for eight-hour work days and they used an electronic timekeeping system that was on their computer and they would just basically click a button and say, I'm on the clock, and then they would click a button to say they were off the clock either at the end of the day or on their break. And that system was in for years. Beginning in 2011, there was a back-end change to the processing of that where Medtronic came up with a new company policy, was that any time the employee did not click the button within five hours, they would automatically receive one hour's pay without any inquiry into why they didn't take the break or whether they voluntarily chose not to take the break or anything like that. They just said, we're going to voluntarily pay these people one additional hour of pay for that day. Well, isn't it disputed whether or not it's voluntary? I mean, wasn't that required by California law? Well, we're here on a 12B-6, so we can't have any disputed facts. So everything has to be read. And I read your complaint. Do you create a disputed fact when you say the other side contends X, Y, and Z when that's not their complaint? It's your complaint. So is that what you're saying when Medtronic contends that this is voluntary or whatever was the language in your complaint? Does that create an issue? I can point you to the language in your complaint where you're saying that the opponent, that the defendant is contending certain issues, but that doesn't create an issue, does it, when you put words in the other side's mouth? Yes, Your Honor, you're allowed to do that in a complaint. That's just an allegation. I mean, it wasn't. You're saying they're accidental payments, I think is how you worded it, weren't you? Or you said something like, you don't want these payments that Medtronic was making for missing the lunch hour to be considered part of the regular pay that could be accounted for. You want that. You want them to be part of the regular pay that can be accounted towards overtime. That's the main issue, right? Yes, Your Honor. All right, so you can tell us why we should consider the payments to be part of the regular rate of pay when it looks like it falls within an exemption, Exemption No. 5 of the FLSA. That's the main issue we're here for, I believe. Yes, Your Honor. Key to that understanding is that the Fair Labor Standards Act does not permit states to waive compensation that is due, and I'll explain that. So it's undisputed that if Medtronics had this policy and was operating in Texas, where there is no meal break law, we would have a claim. We receive the extra hour. We get extra compensation under the FLSA. It's, you know, $5 a week or something like that. So if this employer, an employee, had been working in Texas, it's undisputed by all the parties that he'd be entitled to the additional compensation and could come into court with a claim. So the issue is can California pass a law that waives a right to compensation that you would have in every other state in the union just because California wants to say it's something else? Now, I think under the Savings Clause you can't get that. Well, okay, explain to me. If there's no break, so they work nine hours in Texas, then they get an hour overtime, right? Is that how that works? So Texas doesn't have a daily overtime provision, so it would get a little bit, but if the employer had a daily overtime provision voluntarily, one like Medtronic had here, to say we're going to pay overtime after eight hours in a day, then the employee would get one hour of overtime for that day. Now, the FLSA in the Texas situation wouldn't kick in until he worked 40 hours in the week, but just to make the thing simple, we'll say on Friday he worked nine hours. One of those hours would be paid at an overtime rate. He'd also receive, well, we'll say he's making $10 an hour just so maybe the math is slightly easier. He'd also receive the $10 premium for the missed meal. The issue is under that situation where it's clearly a voluntary meal break program implemented by a private employer working in Texas, that $10 must be put into the regular rate of pay. You add up all the compensation, divide by the number of hours worked, which in this case would be 41, and that gives a higher regular rate of pay, and that requires additional compensation. My point in the beginning is that all these machinations, they're there for a deliberate purpose, and it's not just to make people study math in high school. The reason is that employers can always comply with the FLSA's maximum hours. There's a minimum wage thing that's not relevant here. So the FLSA, they can always comply with the FLSA if they don't work their employees over 40 hours in a week. So what Congress did in doing this is two things. They say, well, we're going to give them these premiums, but we're also going to make it so darn difficult for employers who work their employees over 40 hours that what they need to do is go hire more people. Don't have one person working 80 hours, have two people working 40. Don't have one person working 60, have two people working 30. The wisdom of that law, we can't debate here. That's what Congress passed, and Congress said, well, we're also not going to allow states to have a race to the bottom where one state can pass some provision over here that waives the FLSA, and then all the employers move to that state. In fact, here it's exceedingly rare because it's in the record that Medtronic moved to Texas, and now Medtronic is coming back into this court and saying that California's supposedly employer-friendly laws would require less pay than somebody working in Texas, and that is not the law that the E-5 standard, which this court had just identified, is extremely critical for the reason pointed out in the brief, is that it creates this additional problem that it's a mathematical certainty that if it falls under E-5, employers take the credit, and they say Medtronic is a wonderful employer and they would never seek to do that, but it would be malpractice for an attorney who's faced with a class action in any other lawsuit to say, they're suing us for overtime and meal breaks, and we are not going to assert a defense of offset. Any employer on the planet would say, if that meal break's an E-5 exception, we're going to take that credit every single time, and that's going to reduce the amount of overtime that other employees are getting. Did you want to reserve any time for rebuttal? Yes, Your Honor. Thank you. Good morning, Your Honor. Donald Falk for Medtronic. There's nothing remotely regular about a payment that is triggered only by a departure from a statutory working requirement, a statutory scheduling requirement. Regular rate of pay is something that encompasses lots of types of compensation, but it does not encompass extra compensation that is paid because of some deviation or departure from a daily standard. So could I ask you what your thoughts are in response to your colleague's argument here that if you interpret California law in the way that you're proposing, that it would result in less pay than if the person were in Texas where meals were not required to be compensated? I mean, yes, there is a difference between statutory requirements and voluntary payments of all kinds. If an employer can engage in any kind of voluntary payment, and that becomes usually, with some exceptions, part of the regular rate of pay. But when it is something that is based on scheduling and it is a statutory requirement, as the U.S. Department of Labor has construed E-5 to include statutory scheduling requirements, then you don't compound that premium payment when you're looking at overtime. I think it's entirely beyond hypothetical to say that because something is required in State A, if someone, if an employer agreed to provide the same benefit in State B, that there is some kind of problem under the FLSA, what you have in real life. I mean, we can get back on the other side of the looking glass now and get in real life. In real life, it looks like this is a repeated issue for Medtronic. It looks like you're trying to circumvent, at least from appearances, having to pay these folks the higher rate. It looks like you do, can arguably, you know, as you are here saying, well, this is appropriate under the California Labor Code, and then we can hook into Exemption No. 5. But that seems to be your, that's your approach to wages. It doesn't seem like this is a one-time thing, and that's the only thing that gives me some pause. I'm not sure what you understand. Mr. Tracy's brought two lawsuits. I understand that. And I don't understand. California employers all are compelled, and at the time at issue here in 2011, the prudent ones did something like what Medtronic did unless they had very strong supervisorial evidence to rebut the notion that a break had not been provided. You have no choice but to pay the meal period if someone does not take, if the break is not provided. In 2011, many, many courts of appeal had held that providing a meal break meant insuring a meal break, and employers were losing this issue and lost it, not 100 percent, but pretty consistently until the Supreme Court in Brinker said, no, actually, you just have to make it available. There's no real choice here, and Kirby also makes clear that there's no choice about paying this premium. Well, I guess let me ask you, is the missed mail payments a way to comply with the statute or a way to remedy a violation of the statute? The second, Your Honor, the Supreme Court, California Supreme Court, has been quite clear that you can't just choose to pay and not provide a meal period. It is a statutory premium required by statute to comply with a statutory work scheduling requirement, which says that on a day of more than five days, I'll leave aside there's lots of exceptions, but basically on a day of more than five days, you have to have a 30-minute period of no work within that first five hours. That is a statutory scheduling requirement that comes, it is a daily standard where both the schedule and the premium are required by another applicable statute, comes squarely within the regulation. I mean, you could say this about any number of other provisions that could be required by one state. This one is only required by California and then could be voluntarily provided somewhere else, but I think we're turning something on its head when you take a requirement that is unique to California, gives employees something they don't get anywhere else, nowhere else, and then say, well, because it does not get compounded into an overtime rate as well that it's somehow a violation of the Fair Labor Standards Act. So they're getting a benefit that the people in Texas aren't getting. No. I mean, you have this hypothetical about a voluntary rate. That's all well and good, but the reality is that this is something that is required in California. It is required only in California. It goes a little far afield of our facts here, but I was curious what Medtronic was doing prior to April 2011 or whenever this new pay system was put in, and I don't want to use up your time, but just in 10 seconds, could I hear? I'm not familiar with the facts. I know what they've done since. Right. You have no idea what they were doing? Well, I mean, I know what most did, and, you know, they paid when they were aware of it, and they sometimes had discussions with their employees in deciding whether to pay breaks, and some companies, I don't think Medtronic was one of them, but there were companies that did not comply. There was a lot of litigation in this period, and one of the things, and particularly, but you have to do one of two things. I mean, if you assert the current law, the laws that is under Brinker and what I think was a minority of courts, but some courts had held before Brinker that you only had to make the break available, well, then if somebody didn't record the break, you better have some form of evidence where someone says, is going to testify, yes, I did this because I wanted to complete a sale, or I did this for another reason, I wanted to leave early, whatever it was. If you don't have that, or if you don't want to do that, even now, it might be prudent to have an automatic payment system. Medtronic doesn't do that anymore. They have more regularized requirements both in training and the supervisors to keep track of these things, and so they pay when someone is not provided a break and don't pay when someone clocks out erroneously or asks to leave early for their own convenience or something else like that. But at the time, in 2011, it was the many, many courts, I think we cite four courts of appeal panels, that had said that if the break isn't clocked in, it's a violation and you need to pay the premium. So do the allocations in paragraph 42 and 43 of the operative complaint regarding the reasons behind the missed meal payments  what's your evaluation of paragraph 42 and 43? Well, my evaluation of paragraph 42 is you can't plead your way around undisputed legal issues, which is essentially what the district court found. What Judge Wynn found addressing the same allegations is that, in fact, on the record, that there was no sign that this was voluntary, and I don't see how it could be voluntary under the statutory construction. Now, Mr. Mitchell is now asserting that in his pleading, he's asserting Medtronic's position, and Medtronic's contrary position had been expressed in the same district court in the prior case, first before Judge Wynn and then in front of Judge Fitzgerald, who was in charge of the Sultan case when it went to judgment, and in this court, and the court was entitled to say you can't plead your way around undisputed legal, the undisputed legal landscape at the time. I would, I think the only other point I would make is I would not, when you talk about hypothetical offsets and hypothetical ways that people could take advantage of this requirement, you have to remember the FLSA is not the only law at issue here, and I'm not, you know, I don't know how things would come out with an offset effort under the FLSA, but I'm positive. I know one thing, that no one's ever tried, people have tried to offset voluntary meal periods, voluntary meal payments, and generally failed, as the cases reflect, but no one's ever tried to offset a compulsory premium for the California statutory requirement, and I suspect it would not go well in the California enforcement agencies or courts, but that's a hypothetical that this court doesn't need to reach, and I will be shocked if anyone ever tries to do that, and what we have here is a clear, a relatively clear statute, further clarified by an interpretive rule that is entitled to at least skid more deference, that says that statutory scheduling requirements that result in statutory premiums are not compounded into the overtime rate. They're regarded as overtime, they're not exactly overtime, they're regarded as overtime, and that, it's a clear fit. Thank you. Thank you. That's trying to have your cake and eat it, too. If you want skid more deference, you need to skid more deference for the entire regulatory scheme. That regulation says premium rates required by statute. Another regulation says premium rates means an hourly rate paid per hour. Lump sums don't qualify as premium rates. Lump sums don't qualify as overtime premiums. So if you want skid more deference, and there's, you know, we're not arguing it, or just a reading of that statute, it does not say premium payments. It says premium rates required by statute above daily standards. We put it in the pleading, and at this state, we can plead around adverse law by having facts in our favor. The, you know, the quotes in there were from. Wrap up. The final thing is that there are important statutory rights under the FLSA, in particular, mandatory attorney's fees. So if this thing is taken out and they win, then employees that have these meal premium problems don't have any redress under California law to enforce their important Fair Labor Standards Act claims. Thank you. Thank you very much. Thank you both, Mr. Tracy and Mr. Falk. We appreciate the arguments presented here today on this interesting issue. The matter of Mitchell v. Medtronic is now submitted.
judges: Schroeder, Murguia, Gleason